1  EVAN FINKEL (100673)
   evan.finkel@pillsburylaw.com
2  MICHAEL S. HORIKAWA (267014)
   michael.horikawa@pillsburylaw.com
3  CHAZ M. HALES (324321)
   chaz.hales@pillsburylaw.com
4  PILLSBURY WINTHROP SHAW
   PITTMAN LLP
5  725 South Figueroa Street, Suite 2800
   Los Angeles, CA 90017-5406
6  Tel: 213.488.7307; Fax: 213.226.4058

7  SHEILA N. SWAROOP (203,476)
   Sheila.Swaroop@knobbe.com
8  WILLIAM O. ADAMS (259,001)
   William.adams@knobbe.com
9  KNOBBE, MARTENS, OLSON &
   BEAR, LLP
10 2040 Main Street, Fourteenth Floor
   Irvine, CA 92614
11 Tel: 949.760.0404; Fax: 949,760.9502

12 NICHOLAS A. BELAIR (295,380)
   Nicholas.Belair@knobbe.com
13 KNOBBE, MARTENS, OLSON &
   BEAR, LLP
14 333 Bush Street, 21st Floor
   San Francisco, CA 94104
15 Tel: 415.954.4111; Fax: 415.954.4111

   CALLIE A. BJURSTROM (137816)
   callie.bjurstrom@pillsburylaw.com
   PILLSBURY WINTHROP SHAW
   PITTMAN LLP
   501 West Broadway, Suite 1100
   San Diego, CA 92101-3575
   Tel: 619.544.3107; Fax: 619.236.1995

   **Attorneys for Plaintiff**
   **MICROVENTION, INC.**

   ALEXANDER D. ZENG (317,234)
   Alexander.zeng@knobbe.com
   KNOBBE, MARTENS, OLSON &
   BEAR, LLP
   1925 Century Park East, Suite 600
   Los Angeles, CA 90067
   Tel: 310.551.3450; Fax: 310.551.3458

   **Attorneys for Defendant,**
   **BALT USA, LLC**

16

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MICROVENTION, INC., a Delaware corporation, | Case No. 8:19-cv-01335-JLS-KES |
| Plaintiff, | [DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE KAREN E. SCOTT] |
| vs. | [PROPOSED] STIPULATED ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION |
| BALT USA, LLC, a Delaware Limited Liability Company, | |
| Defendant. | Honorable Josephine L. Staton |
| | |
| AND RELATED COUNTERCLAIMS | |

-1-

## ORDER GOVERNING THE DISCOVERY OF
## ELECTRONICALLY STORED INFORMATION

The Court hereby enters the following Stipulated Order Governing the Discovery of Electronically Stored Information ("ESI").

1.     This Order supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.     This Order may be modified for good cause. Any practice or procedure set forth herein may be varied by agreement of the parties and/or third parties (where applicable), confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents.

3.     Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

4.     A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5.     General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall include the metadata fields and meet the specifications in **Appendix A**.

a.     The parties are to produce responsive ESI intact at the family level, including all attachments; however, a party need not produce attachments to items included on a privilege log unless those items are responsive, unique, material, non-duplicative and not privileged.

b.     The parties may use technology to reduce the burden and expense of reviewing and producing documents and ESI, including threading, deduplication, de-NISTing, conceptual clustering, predictive coding or other assistive technologies, provided their use is supervised and validated by competent outside counsel.  A party may produce only the most inclusive email in an email chain in lieu of producing every responsive, non-privileged individual email ("thread suppression"), provided that the

-2-

inclusive email contains all message contents and attachments in the chain. The parties may (but shall not be required to) apply deduplication to their productions, provided the list of custodians identified in the appropriate load file field includes the custodians whose deduplicated versions of a document are not being produced. In the case of emails, a parent email along with its associated attachments is considered a single document for purposes of deduplication. A Party is only required to produce a single copy of a responsive document or email family. Parties may de-duplicate stand-alone documents or entire email families globally using MD5 or SHA-1 hash value matching. Parties are not required to produce embedded files if the relevant portion thereof is reflected in the version of document that is produced. Parties may omit from their productions superfluous logo files and email footers.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email families or other forms of electronic correspondence (collectively "email"). To obtain email families, parties must propound specific email production requests.

a. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

b. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

c. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

d. Defendant shall limit its email production requests to the inventors listed on the face of the patents being asserted, and a total of five additional custodians.

-3-

1   Plaintiff shall limit its email production requests to the persons identified by name in
2   paragraphs 10-12 of the Complaint (Dkt. No. 1), and a total of five additional
3   custodians.  The parties may jointly agree to modify this limit without the Court's leave.
4   The Court shall consider contested requests for up to three additional custodians per
5   producing party, upon showing a distinct need based on the size, complexity, and issues
6   of this specific case. Should a party serve email production requests for additional
7   custodians beyond the limits agreed to by the parties or granted by the Court pursuant
8   to this paragraph, the requesting party shall bear all reasonable costs caused by such
9   additional discovery.

10          e.      Each requesting party shall limit its email production requests to a
11  total of seven search terms per custodian per party. The parties may jointly agree to
12  modify this limit without the Court's leave. The Court shall consider contested requests
13  for up to three additional search terms per custodian, upon showing a distinct need based
14  on the size, complexity, and issues of this specific case. The search terms shall be
15  narrowly tailored to particular issues. Indiscriminate terms, such as the producing
16  company's name or its product name, are inappropriate unless combined with
17  narrowing search criteria that sufficiently reduce the risk of overproduction. A
18  conjunctive combination of multiple words or phrases (e.g., "computer" and "system")
19  narrows the search and shall count as a single search term. A disjunctive combination
20  of multiple words or phrases (e.g., "computer" or "system") broadens the search, and
21  thus each word or phrase shall count as a separate search term unless they are variants
22  of the same word (e.g., "pat." or "patent", "infringe" or "infringement") including
23  variants of a party's name (e.g., "MVI" or "MicroVention"), or are a combination of
24  the patents at issue in this case (e.g., "Patent A" or "Patent B" or "Patent C" or "Patent
25  D"). Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to
26  limit the production and shall be considered when determining whether to shift costs
27  for disproportionate discovery. Should a party serve email production requests with
28  search terms beyond the limits agreed to by the parties or granted by the Court pursuant

-4-

1  to this paragraph, the requesting party shall bear all reasonable costs caused by such
2  additional discovery.

3      7.      Section 12 of the Protective Order entered in this section titled
4  "INADVERTENT    PRODUCTION    OF    PRIVILEGED    OR    OTHERWISE
5  PROTECTED MATERIAL" shall apply by its terms to ESI produced in this case.

6

7  IT IS STIPULATED AND PROPOSED, THROUGH COUNSEL OF RECORD.

8

9  DATED:  October 25, 2019          PILLSBURY WINTHROP SHAW
                                     PITTMAN LLP
10

11                                   By:   /s/ Evan Finkel
12                                   Evan Finkel (SBN 100673)
                                     Evan.Finkel@pillsburylaw.com
13                                   **Pillsbury Winthrop Shaw Pittman LLP**
                                     725 South Figueroa Street, Suite 2800
14                                   Los Angeles, CA 90017-5406

15                                   Attorneys for Plaintiff
                                     MICROVENTION, INC.
16
   DATED:  October 25, 2019          KNOBBE, MARTENS, OLSON & BEAR,
17                                   LLP

18                                   By:   /s/ Sheila N. Swaroop
19                                   Sheila N. Swaroop (SBN 203,476)
                                     Sheila.Swaroop@knobbe.com
20                                   **Knobbe, Martens, Olson & Bear, LLP**
                                     2040 Main Street,  Fourteenth Floor
21                                   Irvine, CA  92614

22                                   Attorneys for Defendant
                                     BALT USA, LLC
23

24  FOR GOOD CAUSE SHOWN, IT IS SO ORDERED

25

26  DATED:_____

27
   _____
28  United States District Judge / Magistrate Judge

-5-

## Appendix A

## IMAGES

TIFF images for each produced record shall be provided as Group IV, 300-dpi single page TIFF files named "<PageID>.TIF (e.g., "ECY00000005.TIF") with no spaces in the file name.

TIFF images will be provided in a folder called "IMAGES" on the production media. All TIFF images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

## DATA FILES

Associated metadata for each produced record will be produced in a Concordance load file format (.dat) and include the following fields, extracted from the original native, if available, or populated by the producing party as needed:

- BEGDOC
- ENDDOC
- PAGECOUNT
- BEGATTACH
- ENDATTACH
- ATTACHCOUNT
- CUSTODIAN(S)
- FILENAME
- FILEEXT
- FOLDER
- FILESIZE
- MD5HASH
- AUTHOR
- TITLE
- LASTMODDATE
- LASTMODTIME
- CREATEDDATE
- CREATEDTIME
- EMAIL_FROM
- EMAIL_TO
- EMAIL_CC
- EMAIL_BCC

-6-

- EMAIL_SUBJECT
- EMAIL_DATERCVD
- EMAIL_TIMERCVD
- EMAIL_DATESENT
- EMAIL_TIMESENT
- DESIGNATION (i.e. level of confidentiality if any (e.g. "Confidential" or "Attorneys' Eyes Only")
- TEXTLINK
- NATIVELINK

All of the above metadata field information that is available from the native ESI source files will be extracted therefrom and will not be altered or modified from the original.

A properly formatted Concordance .opt or image load file will be produced with the TIFF images and the extracted or OCR-rendered text files (described below), which links the TIFF images and any native files to the Concordance-type database records. There should be a BEGDOC number in each Concordance .dat load file that corresponds with the name of each production TIFF image in the .opt file.

Metadata and image load files (.dat and .opt) will be provided in a folder called "DATA" on the production media.

With respect to materials collected from productions in prior litigations, such materials shall be produced with the metadata reasonably available from the prior litigation production and there shall be no requirement to create new metadata for such production.

**TEXT FILES**

Extracted text will be produced for all ESI records and all imaged hard copy documents in a document-level, multi-page text file format, with a corresponding path reference appearing in the TEXTLINK field of the load file. If a record does not have extractable text (e.g. hard copy documents, non-searchable .pdfs or images), then an industry-standard optical character recognition process will be executed and OCR-rendered text will be provided in the multi-page text file instead. The filename of each text file will equal the production BEGDOC number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media.

-7-

## FILE TYPES AND NATIVES

The parties anticipate that reasonably accessible, standard files of the types ordinarily used by the parties in the ordinary course of business will be subject to discovery. The parties shall have no obligation to produce cookies, embeddings, deleted, shadowed or fragmented files, residual data, cached or temporary files, or any ESI that would only be preserved by taking a forensic (bit stream) image of a hard drive.

File types which do not render in a usable manner when converted to image with extracted text, such as spreadsheets, databases and multimedia files shall be produced as natives with a TIFF slipsheet indicating this.  The parties each reserve the right to request and receive native files for produced records where visibility, usability or functionality is impaired by the TIFF and extracted text formatting.

The filename of each native file will equal the production BEGDOC number of the corresponding page and have the same file extension as the original, with a corresponding path reference appearing in the NATIVELINK field of the load file.  Native files will be provided in a folder called "NATIVES" on the production media.

## TIME ZONE

The time stamps and metadata for all records shall be normalized to Pacific Standard Time or Pacific Daylight Time, as appropriate for the particular time of year.

## HIDDEN CONTENT and TRACKED CHANGES

MSWord and other word processing files will be rendered to TIFF so as to show tracked changes, hidden text, comments, headers, and field codes.  PowerPoint and other presentation slides will be rendered to TIFF with full page slides, with all hidden slides and comments visible, and with any notes summaries appended at the end.